B. W. LEE *et al. v.* SECURITY BANK & TRUST COMPANY
*et al.**

*(Jackson.* April Term, 1911.)

1. **DEEDS OF TRUST.** Provision for maturing whole indebtedness for default as to part is enforceable both as to foreclosure and personal judgment.

Where a trust deed provides that, upon the grantor's failure to pay promptly any part of the indebtedness, taxes, etc., as it becomes due, all of the indebtedness shall, at the option of the creditor, and without notice to the grantor, become immediately due and payable, the creditor may, upon default made, exercise his option to accelerate the maturity of the notes, and make them all due for the purpose of a personal suit thereon as well as for foreclosure, upon the principle that it is a plain matter of contract, which the parties are entitled to have enforced according to its terms; and such action on the part of the creditor is not restrainable in equity, upon the payment of the amount fallen due, on the ground that it is the enforcement of a forfeiture. (*Post, pp.* 585-590.)

2. **SAME.** Same. Tender of part due, to be effective, must be made before exercise of option to mature the whole indebtedness.

The creditor secured by a deed of trust must accept a tender of the amount of that part of the indebtedness that has become due according to the terms of the contract, when made after such default, but before he has exercised his option under the contract to mature the whole indebtedness for nonpayment of part, and such tender will make the option clause inoperative under such default, and will prevent the acceleration of the

---

*Effect of tender after default of amount due under chattel mortgage, see note in 15 L. R. A. (N. S.), 1164.

Lee v. Bank.

maturity of the unmatured indebtedness; but a tender of the overdue indebtedness, with interest, made after the exercise of such option and before the sale, or with the accrued costs, if made after suit brought to enforce the deed of trust, will not prevent such acceleration.   (*Post, pp.* 588, 589, 590, 591.)

3.   **SAME. Option to mature whole indebtedness for nonpayment of part at its maturity may be exercised in what way; instances of ways.**

The option of the creditor secured by a deed of trust to mature the whole indebtedness for the nonpayment of any part thereof at its maturity may be exercised in any clear manner evidencing an unmistakable intention to do so, as by taking decisive steps for foreclosure, by suit therefor, or by sale out of court pursuant to the provisions of the instrument; and the advertisement of the property for sale as provided in the trust deed is a sufficient exercise of the option.   (*Post, pp.* 588-591.)

4.   **SAME. Charge in bill that sale was advertised by authority of owner of indebtedness secured, admitted in the answer, prevents question as to formal meeting of board of directors of bank owning such indebtedness.**

Where, in the grantor's suit to enjoin the foreclosure sale of property, attempted to be made under the power of the deed of trust and under the provision therein authorizing the creditor to mature the whole indebtedness for the nonpayment of any part thereof at its maturity, the original bill alleged that the property was advertised for sale to pay the whole indebtedness by authority of the owner of the notes, which the answer admitted, the grantor cannot raise the question that there was no formal meeting by the directors of the bank owning the notes authorizing the trustee to advertise the property for sale; for the allegation of the original bill, admitted by the answer, is conclusive of the point.   (*Post, pp.* 589, 591, 592.)

Lee v. Bank.

5. **SAME. Creditor is not estopped to mature whole indebtedness after expiration of agreed postponement.**

Where a deed of trust securing notes empowered the holder thereof, at his option, to mature the whole indebtedness, upon the nonpayment of a part thereof, and said holder, after the nonpayment of a part of said indebtedness, agreed not to exercise the option until after the decision of a suit in which the debtor and grantor was interested, and from which he expected to receive money sufficient to pay off the indebtedness, and after said suit was decided adversely to said debtor, the holder of the notes caused the trustee to advertise the mortgaged property for sale for the whole indebtedness, because of such default, and thereafter the debtor asked the creditor the amount of the indebtedness overdue according to the terms of the contract, and having ascertained the amount, tendered the same, which the cashier of the bank holding the notes refused to receive, upon the ground that he was not authorized to receive it, unless the whole indebtedness should be paid, such bank holder was not estopped from exercising its option to mature the whole indebtedness by refraining to do so until said litigation was terminated; and the tender after the exercise of the option to mature the whole indebtedness was too late to be effective. (*Post, pp.* 585-587, 592.)

6. **SAME. Option to mature whole indebtedness for nonpayment of part may be exercised without notice to debtor, when so provided in the trust deed.**

The holder of notes secured by a deed of trust may exercise his option therein given to mature the whole indebtedness for the nonpayment of a part thereof at its maturity, without notice to the debtor, where the deed of trust dispenses with such notice. (*Post, pp.* 586, 592.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
F. H. HEISKELL, Chancellor.

MCKELLAR & KYSER, for complainants.

THOS. M. SCRUGGS, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

On the 15th day of September, 1909, Mrs. B. W. Lee,
and her husband, James Lee, Jr., being indebted to the
Security Bank & Trust Company by nine promissory
notes, two maturing January 20, 1910, three of them
January 20, 1911, 1912, and 1913, respectively, two January 20, 1914, and two January 20, 1915, all aggregating
$37,473.32, all executed pursuant to a contract dated
September 9, 1907, and bearing interest at the rate of six
per cent. per annum from date, except one, and all of
them providing for attorney's fees, executed a trust deed
to W. R. Cross, upon certain real estate situated in Memphis, Tenn., for the purpose of securing these notes; also
all taxes and assessments and insurance. The instrument provided that the payee should be at liberty to advance and pay such sums as might be proper to satisfy
taxes and to maintain insurance and repairs, and to pro-

Lee v. Bank.

tect and preserve the property, and that such amounts so paid should be held and treated as part of the expense of administering the trust. The trust deed contained the usual provision that upon the payment of the indebtedness and expenses the title should revest in Mrs. B. W. Lee, who owned the lot at the time the instrument was made.

The trust deed also contained the following:

"But if said grantors shall fail to pay any part of said indebtedness promptly when the same becomes due, or shall fail to pay any sum necessary to satisfy and discharge taxes before they become delinquent, or to maintain insurance or repairs, or the necessary expense of protecting the property, and executing this trust, then, or in either such event, all of the indebtedness herein secured shall, at the option of the owner thereof, and without notice to the grantors, become immediately due and payable, principal and accrued interest, and the said trustee is hereby authorized and empowered to enter and take possession of said property, and before or after such entry to advertise the sale of said property for twenty-one days by three weekly notices in some daily newspaper published in Memphis, Tennessee, and sell the said property for cash to the highest bidder, free from the equity of redemption, homestead, dower and all other exemptions, all of which are hereby expressly waived, and said trustee shall execute a conveyance to the purchaser in fee simple, and deliver possession to the purchaser which the grantors bind themselves shall be given without obstruction, hindrance or delay."

Lee v. Bank.

Default occurred on two notes maturing January 20, 1910, and in the payment of taxes and insurance. The bank called Mr. Lee's attention to this. He said he was unable to meet the debt, but that he had pending, at the time, a lawsuit in this court against his father's estate; that if he should be successful in this suit he would be in funds sufficient to pay the whole indebtedness; if not he would not be able to pay any of it. The bank did not formally agree to any postponement for the time indicated, but gave him an intimation that it would wait on him until the suit should be heard from. The suit was finally decided in the early part of July, 1910. The president of the bank testified that after this time he called upon Mr. Lee for the money, and he said he was unable to pay it. Mr. Lee denies this, and says that at the time the suit was decided adversely to him in this court he went on a "spree," and was not up town until the day the sale of the property was to take place under the proceedings hereinafter mentioned.

We have carefully read the testimony of the parties upon this subject, and we are inclined to think that Mr. Lee may have been spoken to by the bank, and may have forgotten it, owing to the fact that he was under the influence of strong drink. In short, taking into consideration his condition as admitted by himself, and the positive testimony of the president of the bank, we are inclined to think that the latter states the facts more accurately. However, this question aside, it appears that shortly after the result of the case in this court was

known, the bank caused the property to be advertised, by the trustee, for sale. This advertisement is dated July 18, 1910, and, so far as necessary to be quoted, reads:

"Default having been made in the payment of the debts and obligations secured to be paid in a trust deed executed October 15, 1909, by Bodien W. Lee, and James Lee, Jr., to the undersigned as trustee, recorded in the register's office of Shelby county, Tennessee, in record book 463, page 490, and the owner of the debts secured having directed me to foreclose said trust deed and sell the property conveyed to me therein, all of said debts having matured by default in the payment of a part thereof, at the option of the owner, this is to give notice that I will, on Tuesday, August 9, 1910, commencing at 12 o'clock noon, at the southwest corner of Main St. and Madison Ave., Memphis, Shelby county, Tennessee, offer for sale," etc., describing the property.

On August 9, 1910, James Lee, Jr., appeared in the bank with his attorney and asked Mr. Polk, its president, how much was due on the indebtedness, referring to the two notes then due. Mr. Polk referred him to the cashier, Mr. Cross. The latter, after making some calculations, gave the figures as $8,116.49. The attorney finding he did not have enough money with him to make the tender, left the bank and returned a few minutes thereafter with the full sum mentioned, and tendered it. Mr. Polk said that the board of directors was then in session, and that he was not authorized to receive it unless the whole indebtedness should be paid. Immediately there-

after the original bill was filed, enjoining the sale. This bill alleged, among other things, that the bank had ordered the advertisement to be made which we have mentioned above. It is noted that this advertisement recites that the whole indebtedness had become mature under the terms of the mortgage, and the property was to be sold therefor. The answer admitted the facts charged.

The bank filed a cross bill to recover judgment on the notes, and to have the mortgage foreclosed.

During the course of the evidence Mr. Polk testified that there had never been any formal directors' meeting at which a resolution had been passed ordering the property to be advertised for sale, and maturing the notes, but that the directors had talked about the matter.

The chancellor rendered a decree on the cross bill in favor of the cross-complainants for the full amount of the indebtedness and for attorney's fees and expenses which accrued pursuant to the trust deed directing a sale of the property therefor. From this decree the original complainants appealed to this court, and have assigned errors. These assignments draw in question the correctness of the chancellor's decree adjudging that all of the indebtedness had become mature; that a personal judgment could be rendered against the makers of the notes, and that the mortgage or trust deed should be foreclosed. There was also an assignment questioning the correctness of the chancellor's decree in respect of attorney's fees. Coverture was not pleaded by Mrs. Lee as a bar to a personal judgment against her. The as-

signment on this matter was based as to both of the original complainants on the contention that even if the bank had the right to mature all of the notes for the purpose of foreclosure, it did not have the right to advance the maturity for purposes of personal judgment.

The clear weight of authority is that under instruments containing provisions such as we have quoted from the trust deed made by the Lees, the mortgagee may, upon default made, exercise his option to accelerate the maturity of the notes, and make them all due, not only for purposes of foreclosure but for purposes of personal suit thereon. The principle is that it is a plain matter of contract, and the parties are entitled to have the contract enforced according to its terms; the trust deed and the notes being construed together as parts of one contract. The theory that such action on the part of the mortgagee is the enforcement of a forfeiture and should be restrained on that ground in a court of equity upon payment of the amount fallen due, is supported by some authorities, but is not recognized as sound in the majority of the later cases.

The authorities are in conflict upon the effect of a tender made after default. In our opinion, the better view, supported by the latest cases, is that where a tender is made after default, but before the mortgagee has exercised his option, the mortgagee is bound to accept the money, and the acceleration will not take place. There are some authorities which hold that the mortgagee is bound to accept the money if tendered at any

time before sale made, even after suit brought, if the tender of the money and interest due includes also the costs accrued. We do not think these authorities state the true rule, and decline to follow them. As we have said, the question is not whether the court will enforce a penalty, or forfeiture, since no such matter is involved, but whether it will recognize a contract which the parties have made, for advancing the day of payment upon a contingency which they have provided for in terms agreed upon between them.

The option may be exercised in any clear manner evidencing an unmistakable purpose to that end, as by taking decisive steps for foreclosure, by suit therefor, or sale out of court pursuant to the provisions of the instrument. We think that, in the present case, the advertisement of the property in the terms stated was a sufficient exercise of the option. The cross-defendants cannot raise the question that there was no formal directors' meeting prior to the order given to the trustee to advertise the sale of the property for the payment of the whole indebtedness, because the original bill alleges, and the answer thereto admits, that this was done by authority of the bank, the owner of the paper. This advertisement declared that all of the notes had become due by reason of the default made. There is no evidence to show that the officers of the bank did not have power to order such advertisement. It may have been within the scope of their duties as fixed by the by-laws of the corporation. However, we need not speculate upon this, as we regard

the allegation of the original bill, admitted by the answer, conclusive of the point. What transpired at the bank on August 9th cannot alter the result. This did not show that the bank had not already exercised its option, but merely that its directors had under consideration the question whether the bank should abandon the proceedings taken, and restore the original *status*.

The rights of the bank were not prejudiced by its agreement to postpone action until after the decision of the case pending in this court between James Lee and the estate of his deceased father. Its right remained to exercise its option, at any time thereafter, if it should act before lawful tender made by the debtors. Nor was it bound, before exercising such option, to serve notice on the debtors, since by the terms of the contract it was privileged to act without personal notice. The debtors were not taken by surprise, since they had no ground to believe or hope that the bank would extend indulgence after the adverse decision in the case referred to.

There was error in the matter of attorney's fees, which has been corrected by an entry already made, and need not be further referred to.

It results that the decree of the chancellor must be affirmed in all other respects.