# BRANDTJEN & KLUGE, INC., v. POPE—192 S. W. (2d) 496.

Western Section. June 14, 1945.

Petition for Certiorari denied by Supreme Court, December 8, 1945.

Lee A. Hardison, Jr., and Granville Farrar, both of Memphis, for appellant.

James F. Bickers, of Memphis, for appellee.

BAPTIST, J. This is an action of replevin instituted by bill in the Chancery Court of Shelby County. The parties will be called complainant and defendant as in the Chancery Court.

It is alleged that the complainant, Brandtjen & Kluge, Inc., is engaged in selling presses and printing equipment by conditional sales contracts.

That on January 15, 1944, it sold and delivered to the defendant, John W. Pope, D. B. A. Golden Rule Printers, certain property including printing press, press feeder and other equipment, which is particularly described in the bill.

That the sale was made under a conditional sales contract, which provided for acceleration of the outstanding

balance in event of default in the payment of any installment when due.

That the defendant signed the contract evidencing a deferred balance of $1072.45 and executed notes to cover this balance.

That the payments due July 15, 1944, and August 15, 1944, have not been paid.

That by reason of the default in payment and otherwise unsatisfactory condition of the account, the complainant has elected to declare the balance of $683.64 due and that the defendant unlawfully detains the property.

A writ of replevin was issued and executed.

The defendant filed an answer and cross bill in which he alleges that he has complied with the terms of the contract and has paid all of the notes due and one in advance, all of which the complainant knew.

That he has been damaged by loss of business and inability to fulfill contracts, and do other business employing use and aid of the property replevined, and demanded a jury to try the issues of fact.

Two issues of fact were submitted to a jury, which, with the verdict on same, are as follows:

"Was complainant on August 30, 1944, entitled to the immediate possession of the property described in the Bill in this cause and in the Writ of Replevin issued in this cause? Answer: No.

"II. If your answer to Issue I is No; then answer: What is the amount of damages sustained by defendant resulting from the wrongful issuance of the Writ of Replevin in this cause? Answer: $225.00."

The complainant's motion for a new trial was oerruled and the Chancellor entered a decree in accordance with this verdict from which the complainant has appealed and assigned errors.

The first four assignments of error contend that the verdict and decree on these issues are contrary to the law and the evidence and that there is no material and competent evidence to sustain the verdict.

 It is unnecessary to cite authorities on the rule that the verdict of a jury, satisfactory to the trial judge in a civil case, where there is conflicting evidence, will not be set aside by the appellate court, if there is any material legal evidence to sustain it, and that the verdict of a jury in the Chancery Court has the same force and effect as a verdict in a law court.

The contract of sale provided for the payment of $1072.45 as follows: $50 payale with order, $163.81 upon the execution and delivery of the agreement, twenty-three notes of $35 each and one final note of $53.64. The first note was due February 15, 1944, and one note to become due on the 15th day of each month thereafter for twenty-three months, with interest at six per cent.

The contract provided for acceleration on default in any installment as follows:

"That in case of default in any of the payments of principal, or interest, when due as above specified, and for ten days thereafter, the said first party shall thereupon forthwith have the right to declare this contract at an end, and to take immediate possession of said above described property, and in such case, the said property, as well as all payments of principal, or interest which shall have been made herein, shall belong to, and be retained by said first party as liquidated damages for nonperformance of this contract on the part of said second party and for use of and injury to said property."

After the execution of the contract and the delivery of the machinery a controversy arose between the parties in which the defendant contended that there were certain

alleged defects in the machinery. It was claimed that by reason of these defects the machinery was incapable of doing the work which it had been represented as capable of doing at the time of the sale. The contention was that by reason of the defects a part of the machinery at times would not work automatically and would have to be operated by hand, causing a loss of time.

The defendant contended also that there had been unreasonable delay in the installation of the machine and for this reason notified the complainants that he would take thirty days grace in the payment of the notes, that is that the due date would be extended thirty days, to which there was no stated objection on the part of the complainants.

Another controversy arose on the following clause in the contract:

"Said property to be kept insured against loss or damage by fire, and to have inserted in the policy loss, if any, payable to Brandtjen & Kluge, Inc., as its interest may appear; said policy to be delivered to said first party."

In a number of letters to the defendant the complainant insisted that the defendant furnish the insurance protection provided in the cause set out.

The defendant declined at one time to furnish the insurance until the alleged defects in the machinery were removed and later in letters requested the complainant to inform him of the amount of insurance wanted and offered, on receipt of that information to procure the insurance.

Five of the notes in question were paid by the defendant by mailing checks to the complainants at their office in St. Paul, Minnesota. The first note which was due February 15, 1944, was thus paid, the payment being re-

ceived by the complainant on March 15, 1944, accepted and marked "paid" March 20, 1944. Payment of the second note due March 15, 1944, was mailed and received by complainant on April 21, 1944, accepted and marked "paid" May 25, 1944. Payment of the third note due April 15, 1944 was mailed, received, accepted and marked "paid" May 25, 1944. Payment of the fourth note due May 15, 1944, was mailed, accepted and marked "paid" July 6, 1944. Payment of the fifth note due June 15, 1944, was mailed, accepted and marked "paid" August 4, 1944.

The letter enclosing this last mentioned payment was written July 31, 1944, and contained the following statement:

"Am not going to pay as the notes come due, as I have before told you, until you play square with me by seeing that I get what I bought—a rebuilt C & P press with a new (not a broken) Kluge feeder."

On August 14, 1944, the defendant mailed to complainant payment of the sixth note due July 15, 1944, which was received by the complainant on August 15, 1944, and on August 24, 1944, the defendant mailed to complainant payment of the seventh note due on August 15, 1944, which was received by the complainant on August 25, 1944.

On August 10, 1944, the complainant wrote the following letter to the defendant:

"This will acknowledge receipt of your letter of July 31st in regard to your contract account. This letter was referred to me by Mr. R. E. Barnes and Mr. H. A. Brandtjen together with the file in connection with your contract. I was instructed to take action under the contract immediately because of your failure to furnish insurance and your stated intention in your letter to refrain from paying

your notes in accordance with your agreement. Our attorney will contact you in respect to this matter shortly."

It will be noted that this letter makes no claim of delinquency in the payment of the notes, or an intention of the complainant to declare the contract at an end. It will also be noted that the letter advised the defendant that its attorney would contact him shortly, however, the attorney, Mr. Hardison, testified that at the time he received the papers from Brandtjen & Kluge he was instructed not to contact Mr. Pope, and that he did not contact him.

On August 25, 1944, the complainant returned the payment which it had received on August 15th accompanied with the following letter:

"Your letter of recent date has been received together with your check No. 315989 in the amount of $36.18. This is a cashiers check issued by the First National Bank of Memphis, Tennessee, and it is returned to you herewith.

"We notified you of the position taken by us in view of your own stated stand and your defaults. There is nothing this office can do for you now. You must handle this with our local attorney."

On August 28, 1944, the defendant returned the July payment to the complainant accompanied with the following letter:

"Greatly surprised at your returning remittance for July, which was in keeping with your own proposition to mark up the notes, and also inasmuch as you have also received the August note payment sent you by Express Money Order.

"Am not in default of the contract, except that have not segregated to you any insurance because you have not at any time answered my request of the amount of insurance you want made out to you on the press.

"Therefore, being not in arrears, and not having defaulted, am returning to you the remittance covering July which you have kept several weeks.

"If you sue, I will also sue you for not having yet mended the broken press, broken by your erector.

"Have not yet had any trouble with anybody in a life of 72 years, forty-odd years of that as a christian minister, always living up to the golden rule, and am surely not going to have any trouble with you, unless you *force* it on me.

"Have treated you with perfect fairness and justice, which you can not claim as your treatment of me in selling me a press that will not do what you claim for it, and in not sending the part to replace the broken part to test out if that is the seat of the trouble.

"I demand my two notes due for which have paid in accordance with the agreement—July and August."

On August 30, 1944, the replevin bill was filed in the Chancery Court and on September 8th the two payments for July and August were returned to the defendant by complainant's local counsel.

On the question of damages the defendant testified:

"Q. Mr. Pope, can you tell us what damage you sustained by the loss of this property from August 30th until this day, the 3rd of October? A. I made a transcript of my records of production, and during the period when I had the press, and when it was taken out, in other words, seven months. Now, I will say this, before I got the press I had help. After I got the press I did not need so much help and the man just come in once in awhile when I did not have other help, but since this was taken out I have not had a bit of help, couldn't get any, none to be had. The average daily net loss for the seven months was $15.78.

"Q. For what? A. The net loss, the average net loss was $15.78.

"Q. What period of time? A. The net value of my time as produced during the time I had the press was $15.78 a day. For the month since I have not had the press my net earnings were $6.42 a day.

"Q. Well that is a difference of about $9.00 a day for the time that you have been out of the use of this property that was replevined; is that right? A. All right.

. . . . . . .

"Q. And you are testifying from records that you have made from your books; is that right. A. Yes, sir.

"Q. You keep a record of everything you do? A. Yes, sir.

. . . . . . .

"Q. Now, Mr. Pope, have you had to refuse business or been unable to comply with your orders? A. Almost every day.

"Q. Don't answer this yet, because I think counsel is going to object to it, and if his objection is made, let me finish my question.

"The Court: All right, wait until he gets through asking the question, then the Court will rule. Go ahead.

"Q. Have you been unable to fulfill your orders that you have been accustomed to fulfilling since the replevin of this machinery?

"Mr. Strauch: I am going to object to that as leading.

"Mr. Bickers: State whether or not you have then; that corrects it.

"The Court: All right, the objection is sustained. All right, reframe your question.

"Q. State, if you know, whether or not you have been unable to fulfil your orders that you were accustomed to

fill before this machinery was taken away from you? A. I have not been able to fill them, not only so, but I have turned down orders every day because there is no way to take care of them.

"Q. Have you any idea how much those orders would amount to? A. Well, it would be difficult.

"Mr. Strauch: I am going to object to that question as being purely speculative and a guess on the part of the witness. If he knows the fact he can testify.

"The Court: The objection is overruled. You can examine him about that.

"Mr. Strauch: Note an exception.

"Q. Will you tell the Court and jury, if you know, the loss of business? A. The orders that were rejected we don't analyze them enough—

"Q. How is that? A. The orders that are rejected we don't go into details enough to know what the value would be, but by the records of those orders we do have we could arrive at a conclusion about it, but it would be, as you say, speculative, but I have lost orders, several every week, sometimes two or three a day. I have turned down orders because I am already overstocked.

"Q. But you don't know the value of them? A. No, sir.

"Q. You can't tell the court and jury what you have lost on them? A. No, sir, I couldn't do that."

Counsel for complainants have filed a very able and exhaustive brief citing many authorities, among which is the case of Lee v. Security Bank & Trust Co., 124 Tenn. 582, 139 S. W. 690, 692. In this case it is said:

"The clear weight of authority is that under instruments containing provisions such as we have quoted from the trust deed made by the Lees, the mortgagee may, upon default made, exercise his option to accelerate the ma-

turity of the notes, and make them all due, not only for purposes of foreclosure but for purposes of personal suit thereon. The principle is that it is a plain matter of contract, and the parties are entitled to have the contract enforced according to its terms; the trust deed and the notes being construed together as parts of one contract. The theory that such action on the part of the mortgagee is the enforcement of a forfeiture and should be restrained on that ground in a court of equity upon payment of the amount fallen due, is supported by some authorities, but is not recognized as sound in the majority of the later cases.

"The authorities are in conflict upon the effect of a tender made after default. In our opinion, the better view, supported by the latest cases, is that where a tender is made after default, but before the mortgagee has exercised his option, the mortgagee is bound to accept the money, and the acceleration will not take place. There are some authorities which hold that the mortgagee is bound to accept the money if tendered at any time before sale made, even after suit brought, if the tender of the money and interest due includes also the costs accrued. We do not think these authorities state the true rule, and decline to follow them. As we have said, the question is not whether the court will enforce a penalty, or forfeiture, since no such matter is involved, but whether it will recognize a contract which the parties have made, for advancing the day of payment upon a contingency which they have provided for in terms agreed upon between them.

"The option may be exercised in any clear manner evidencing an unmistakable purpose to that end, as by taking decisive steps for foreclosure, by suit therefor, or sale out of court pursuant to the provisions of the instru-

ment. We think that, in the present case, the advertisement of the property in the terms. stated was a sufficient exercise of the option.''

■ We are of the opinion that the two letters from the complainant which we have quoted did not constitute notice of an intention to accelerate. The letters are indefinite as to what the complainant's intentions might be. The letter of August 10th claims no delinquency in the indebtedness, but stated their attorney would contract the defendant, and so under this authority cited the option to accelerate these notes was not exercised in a ''clear manner'' evidencing an unmistakable purpose to that end until the replevin suit was filed, and at the time of the filing of the suit the complainant had in its hands the payments to liquidate the last two notes which were due. Under the authority cited it was bound to accept the money and the acceleration did not take place.

As stated we think it fair to conclude that the complainant made no objection to the defendant's proposition of extending the due dates of the notes for thirty days. Early in the correspondence he made the proposition or statement this would be done on account of the delay in the installation, and frequently in his letters thereafter he referred to it as an agreement. No letters from the complainant make any objection or repudiate this claim on the part of the defendant.

■ Under this assignment the complainant contends that the defendant was under contractual obligations to procure insurance for the benefit of the complainant and his failure to do so justified acceleration. We cannot agree to this contention. The clause in the contract providing for insurance contains no such stipulation, and in the absence of such there is no agreement that the de-

fendant's failure to obtain the insurance authorized the complainant to accelerate the payment of the notes.

In 41 Corpus Juris, p. 858, Sec. 1048, it is said that a mortgage may be foreclosed for nonperformance of any act, the performance of which is stipulated for or secured by the mortgage.

The contention is that while there was no stipulation or acceleration the mere breach of the agreement to procure insurance justified acceleration.

In 41 Corpus Juris, p. 858, Sec. 1047, it is said: "that a mere breach of a covenant to insure without more, it has been held, will not confer a right to immediate foreclosure."

The Chancellor was not in error in submitting the issues and in stating to the jury: "The only ground that has been produced that would warrant the complainant to repossess the property is—were the monthly payments in default, and in default more than ten days?"

 The complainant assigns error on the Chancellor's charge that "the mailing is sufficient payment. The depositing of the check in the mail is delivery under the law and therefore within the time."

The contention is that the place of payment was at the home office of the complainant, and this place having been agreed on, the payments to be valid must be made there.

It is evident that no other way or means of payment was contemplated except that which was followed— by checks deposited in the mails. We think the contention is disposed of by a citation in the complainant's brief from 48 C. J., sec. 9, p. 594:

"Remittance by Mail or Other Carrier. Payment is not effectuated by sending the amount due to the creditor by mail or other public carrier until the remittance gets into the hands of the creditor, unless he expressly or by

implication directs or consents that payment be so made, or such mode of payment is according to the usual course of dealings between the parties, from which the creditor's assent can be inferred."

Certainly under the facts and the course of dealing between the complainant and defendant the complainant consented that the payment might be made by use of the ordinary mails.

■ The complainant assigns as error that the damages found by the jury were remote, imaginary and speculative, and relies upon the rule in this State, and, we assume, in all other jurisdictions that such damages are not allowed. Attention is called to the case of Donnelly v. Jackson Bros., 2 Tenn. Civ. App. 408, in which the court said "nothing is more uncertain than the probable or anticipated profits of a commercial business."

■ The testimony of the defendant which we have quoted takes it out of the rule and affords a reasonably certain basis for the verdict of the jury. It will be noted that the testimony is not as to future and contingent profits, but undertakes to offer a basis for the estimation of loss occurring from the time the property was taken by the complainant to the time of the trial.

"The proof must pass the realm of conjecture, speculation or opinion not founded on facts, and must consist of actual facts from which a reasonable accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn." 15 Am. Jur., p. 574.

As to the degree of certainty required it is said in 25 C. J. S., Damages, sec. 26, pp. 491, 492:

"In cases admitting of such proof . . . the amount of damages must be established with reasonable certainty. However, reasonable certainty is sufficient; absolute certainty is not required; it is sufficient if a reasonable basis

694

of computation is afforded, although the result be only approximate; what is required is that evidence of such certainty as the nature of the particular case permits should be produced. . . . Damages are not uncertain for the reason that the loss sustained is incapable of proof with the certainty as of mathematical demonstration, or is to some extent contingent and not capable of being accurately determined.''

And on page 495, section 28, is the following citation:

''Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result may be only approximate. The wrongdoer is not entitled to complain that the damages cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making were otherwise.—Store Parchment Co. v. Paterson Parchment Paper Co., 282 U. S. 555, 51 S. Ct. 248, 75 L. Ed. 544, reversing Paterson Parchment Paper Co. v. Story Parchment Co., 1 Cir. , 37 F. (2d) 537, certiorari granted Story Parchment Co. v. Paterson Parchment Paper Co.; 221 U. S. 711, 50 S. Ct. 334, 74 L. Ed, 1133—Midland Valley R. Co. v. Excelsior Coal Co., 8 Cir., 86 F. (2d) 177; Meltzer v. Pennsylvania R. Co., D. C. Pa., 29 F. Supp. 840.''

The complainant contends that the defendant was required to specially plead the extension of thirty days time on the payment of the notes, and that the complain-

ant was taken by surprise in the course of the trial that such a position was taken. We do not see how the complainant could have been taken by surprise on the defendant's contention in this respect. It was in possession of all of the letters of the defendant to the complainant making this claim, and the complainant introduced all of these letters in evidence as a part of this case.

We may add that this contention was not presented in the complainant's motion for a new trial in the Chancery Court, and, for that reason is not considered here. We are of the opinion that there is material evidence to support the verdict of the jury and the decree entered in accordance therewith.

All assignments of error are overruled and the decree of the Chancery Court is affirmed. The decree of the Chancery Court provided that the property should be returned to the defendant within thirty days.

Code, Sec. 9299, provides that if the issue be found for the defendant, as in this case, the judgment shall be that the goods be returned to the defendant or, on failure, that the defendant recover their value, the value of the property to be assessed by the jury trying the cause.

No issue was submitted to the jury trying the case and no proof taken as to the value of the property.

The cause is therefore remanded to the Chancery Court to the end that unless the property be returned to the defendant within thirty days, the value of the property may be determined and an alternative judgment rendered as provied by the Code.

The complainant will pay the costs.

Anderson, P. J. and Ketchum, J., concur.