**Sanford OVERHOLT, et al.,
Plaintiffs-Appellants,**

v.

**MERCHANTS & PLANTERS BANK and
James E. Robinson, Trustee,
Defendants-Appellees.**

Court of Appeals of Tennessee,
Eastern Section.

March 10, 1982.

Permission to Appeal Denied by
Supreme Court June 21, 1982.

W. Gordon Ball, of Ball, Dunn & Flanagan, Newport, for plaintiffs-appellants.

James C. McSween, Jr., Newport, for defendants-appellees.

OPINION

SANDERS, Judge.

Plaintiffs have appealed from a decree of the chancery court denying them relief from a wrongful foreclosure under a deed of trust.

In 1974 George G. Hill and wife executed a deed of trust to Defendant-Appellee, James E. Robinson, Trustee, on four contiguous pieces of land in Cocke County. The deed of trust was to secure a $50,000 note payable to the Defendant-Appellee, Merchants & Planters Bank, bearing 9% interest, payable in 143 installments of $400 each

and one last installment of $24,738.88. The deed of trust also provided: "The first payment due _____ and succeeding payments due on the same day of each succeeding month until the entire principal and interest is fully paid. Said payments are a series and default in any payment when due shall, at the option of the owner of said note, mature the remaining unpaid indebtedness."

After Mr. Hill executed the deed of trust he fell on hard times and was frequently late in making his payments. The record shows that between the execution of the deed of trust and the date of sale to the Plaintiff-Appellant, Sanford Overholt, some 19 of his payments were late, some for more than 30 days.

Mr. Hill also was indebted to the Defendant Bank for machinery and equipment. It appears that in December, 1980, the bank started foreclosure proceedings on the machinery and equipment and at the same time started foreclosure proceedings on the real estate, although the payments on it were not delinquent nor was there any relationship between the indebtedness on the machinery and that on the real estate. After legal proceedings were filed to enjoin the foreclosure proceedings on the real estate the bank withdrew its foreclosure proceedings on it.

On January 8, 1981, Mr. Hill sold the property to Mr. Overholt. The property was sold to the Plaintiff subject to the balance on the outstanding deed of trust at that time which was approximately $47,000. After the Plaintiff purchased the property he paid each monthly installment promptly as it became due. Although the deed of trust fails to state on what day of the month the payments were due, it appears from the record that the parties considered the payments were due on the 20th of each month. May 20, 1981, fell on Wednesday and the bank was closed on that day. Patricia Smelcer, who customarily drew the checks and made the payments on the loan for Mr. Overholt, drew the check on that date with the view of making the payment the following day. She got busy on Thursday, however, and forgot to take the check to the bank, but took the check to the bank the first thing the following morning. She gave the check to one of the women at the bank who took it to the office of Mr. Robinson, the president of the bank. Mr. Robinson returned the check to Mrs. Smelcer and refused to accept it, without giving her any explanation. After that she went to talk to two of the directors of the bank but was unable to get any assistance from them. Later in the day she returned to the bank and tendered the payment to Mr. Robinson again, along with an additional check of $5.00 for late charges, but again it was refused. After that a Mr. Dale Cody attempted to make the payment at the branch bank but it was again refused.

Not having been successful in getting the bank to accept the payment the Plaintiff filed suit in the chancery court asking the court to decree that the bank was required to accept the payment and to enjoin the Defendant from foreclosing on the property. The day following the filing of the suit the Defendant began foreclosure proceedings on the property.

The Plaintiff then filed a second suit asking the court to enjoin the foreclosure. Mr. George G. Hill also joined as a Complainant in that case.

The two cases were heard before the chancellor on August 19. At the conclusion of the hearing the court declined to grant the Plaintiff any relief and stated the complaint would be dismissed. The court seemed to be under the impression that Mr. Overholt had no standing to maintain the suits and that any tender of payment should have been made on behalf of Mr. Hill instead of Mr. Overholt. For this reason a third suit was filed by Mr. Hill asking the court to enjoin the foreclosure. A second hearing was held before the chancellor on August 24. Part of the same evidence was offered in this proceeding as was offered in the original hearing but no evidence was offered that was different from that in the original hearing. The chancellor again declined to grant the injunctive relief.

The Plaintiffs have appealed all three cases and they are before us on a consolidated record. For the purpose of the determination of the case we do not deem it necessary to consider the last two cases since they were not necessary for the chancellor to have made a proper disposition of the original case. We shall consider the three cases as one.

The record is in a rather unsatisfactory condition in that the chancellor stated at the conclusion of the first hearing that the complaint was dismissed but the decree, as entered, which dismissed the complaint, has a notation inserted saying, "Insofar as it seeks extraordinary relief." In view of this provision of the decree we deem it appropriate to waive the requirements of Rule 9 of the Rules of Appellate Procedure and treat this as an interlocutory appeal.

The Plaintiff, in his appeal, says it was error for the chancellor not to hold the Defendant was required to accept the tendered payment and to enjoin the foreclosure.

We agree. The proof shows unequivocally that the Defendant was lying in wait for the Plaintiff to make a technical default so it could foreclose on the property. It appears that the reason the bank was so adament in its desire to get this property was because it had suffered a loss on the loan it had made to Mr. Hill on his equipment. Mr. Robinson, president of the bank, testified that because they had suffered a loss on Mr. Hill's machinery they were going to try to get any equity there might be in this property. Before the default on May 20 Mr. Robinson had instructed the employees at the bank not to accept the payment on the loan if default were ever made. When Mr. Overholt went to talk to Mr. Robinson after the payment had been refused Mr. Robinson said to him, "Sanford, this is the opportunity we have been waiting for." He said, "You were late one day—one hour, or whatever—you were late." In his testimony Mr. Robinson described what transpired with reference to the Plaintiff tendering the payment, as follows:

"Q. And do you know of your own knowledge who brought a payment to the bank and when it was done?

"A. His secretary brought a check.

"Q. Do you know when that was brought?

"A. The day after the payment was due.

"Q. The day after the payment was due?

"A. Yes.

"Q. Did the bank refuse to accept the payment?

"A. We did.

"Q. Did she attempt again to make the payment, that same payment, within the matter of a day or so?

"A. Well, when we refused the payment at the main office then his secretary went to our branch and tried to tender the payment at one of our branches, and we refused it there, and then later ... it must have been that same day she brought ... she came back to the bank and had a check in an envelope sealed, and come into my office, I had someone in the office but she come in and handed me the envelope. I said, 'What is this?' And she said, 'Well, you know.' I said, 'Well, wait just a minute and let me open it and see, there might be an answer.' When I opened the envelope and the check was in it, the same check that she had tried ... and I said, 'I told you, I'm not going to take this payment.' And she left.

"Q. You handed it back to her?

"A. Yes, sir."

Some question was raised about the June and July payments not being made. Mr. Overholt testified he did not tender the payments because he was told they would not be accepted. On this same point Mr. Robinson testified on cross examination as follows:

"Q. "Do you know whether or not she has brought the June and July payments in?

"A. I don't.

"Q. One way or the other, it wouldn't make any difference to you one way or the other, would it, sir?

"A. We didn't take them, the help has been instructed not to receive any payments.

"Q. So, it wouldn't have made any difference if she had brought the June, July, August, September, October, November and December payments in, you weren't going to take them?

"A. That's correct."

█ It is well settled in this jurisdiction that "... a tender is unnecessary when it is reasonably certain that the tender will be refused." *Greener & Sons v. Southern Ry. Co.*, 155 Tenn. 486, 290 S.W. 988 (1927); *Cox v. Equitable Life Assur. Soc. of U.S.*, 22 Tenn.App. 311, 122 S.W.2d 823 (1938).

The landmark case dealing with the rights of the mortgagee to exercise its option to accelerate the maturity of notes and the rights of the mortgagor to have a tender of payment accepted after default is the case of *Lee v. Security Bank & Trust Company*, 124 Tenn. 582, 139 S.W. 690 (1911). In that case the court said, at page 590, 139 S.W. 690:

"The authorities are in conflict upon the effect of a tender made after default. In our opinion, the better view, supported by the latest cases, is that where a tender is made after default, but before the mortgagee has exercised his option, the mortgagee is bound to accept the money, and the acceleration will not take place."

The court went on to say, at page 591, 139 S.W. 690:

"The option may be exercised in any clear manner evidencing an unmistakable purpose to that end, as by taking decisive steps for foreclosure, by suit therefore, or sale out of court pursuant to the provisions of the instrument."

The *Lee* case has been cited many times and is still viable today.

In the case of *Stansbury v. Embrey*, 128 Tenn. 103, 158 S.W. 991 (1913) the court held that a tender of payment some three years after payment was due prohibited the mortgagee declaring the entire debt due when he had not done so before the tender was made. The court said, at page 107, 158 S.W. 991:

"The rule was laid down in *Lee v. Bank*, 124 Tenn., 582, 139 S.W., 690, that in order to prevent the acceleration of the maturity of that part of a total indebtedness not matured at the time, a tender of the portion matured under the contract's terms is sufficient, if made after default but before the creditor has exercised his option to declare the entire indebtedness due."

The court further said at 110, 158 S.W. 991:

"... we hold that the tender was properly made to the bank, and that thereafter there was no right in Embrey to declare the entire debt mature. We consider that the rule thus declared best comports with the convenience and safety of business men, to whom when diligent the law should point a mode of warding off foreclosures by debt-payment."

In the case of *Brandtjen & Kluge, Inc. v. Pope*, 28 Tenn.App. 679, 192 S.W.2d 496 (1945) the plaintiff had sold a printing press to the defendant on a conditional sales contract which provided for acceleration of payments in case of default. The defendant defaulted but later tendered the payment. The plaintiff returned the defendant's check with a letter saying, "We notified you of the position taken by us in view of your stated stand and your defaults. There is nothing this office can do for you now. You must handle this with our local attorney." Shortly thereafter the plaintiff filed a replevin action to recover the printing press. The defendant filed an answer and across-action for damages. The issues were resolved in favor of the defendant and cross complainant. On appeal the court affirmed the trial court. In so doing it quoted with approval from the case of *Lee v. Security Bank & Trust Company*. The court said, 192 S.W.2d at page 500:

"We are of the opinion that the two letters from the complainant which we have quoted did not constitute notice of an intention to accelerate. The letters are indefinite as to what the complainant's intentions might be. The letter of

August 10th claims no delinquency in the indebtedness, but stated their attorney would contact the defendant, and so under this authority cited the option to accelerate these notes was not exercised in a 'clear manner' evidencing an unmistakable purpose to that end until the replevin suit was filed, and at the time of the filing of the suit the complainant had in its hands the payments to liquidate the last two notes which were due. Under the authority cited it was bound to accept the money and the acceleration did not take place."

Also see *Allen v. Goldstein*, 40 Tenn.App. 308, 291 S.W.2d 596 (1956).

In the case at bar the tender of payment on the note was made immediately after it became due. Certainly the option to accelerate the payments had not been exercised before the tender was made. "The option to accelerate these payments was not exercised in a 'clear manner' evidencing an unmistakable purpose to that end" until the Defendant started foreclosure proceedings on or about July 21. We accordingly hold that under the authorities cited above the Defendant was bound to accept the payment on the note and the acceleration did not take place. The chancellor was in error in not so holding and enjoining the sale.

The decree of the chancellor is reversed and the issues are found in favor of the Plaintiffs.

Although we are not at liberty to consider matters outside the record for the purpose of determining the issue between the parties, both the Plaintiff and the Defendant represent in their briefs that the property in question was sold at the foreclosure sale. This is a factor we may consider in our remand.

The cause is remanded to the chancery court to the end that if injunctive relief is still viable an injunction shall issue. To the extent that such injunctive relief will not serve to protect the Plaintiffs' property, other redress may be sought.

The cost of this appeal, together with the cost of the trial court, is taxed to the Appellee.

GODDARD and FRANKS, JJ., concur.