**James W. LIVELY and wife Lavina B. Lively, Plaintiffs-Appellants,**

v.

**Carl DRAKE and Anita B. Spencer, Trustee, Defendants-Appellees.**

Supreme Court of Tennessee, at Knoxville.

March 22, 1982.

Harry Berke, Berke, Berke & Berke, Chattanooga, for plaintiffs-appellants.

Phillip C. Lawrence, Chattanooga, for defendants-appellees.

## OPINION

HARBISON, Chief Justice.

In this action the Chancellor enjoined appellees from foreclosing a deed of trust which secured a note executed by appellants and held by appellee Drake. The Court of Appeals reversed and this Court granted review.

There is no dispute concerning the material facts. On August 15, 1972, appellants, Mr. and Mrs. Lively, executed a promissory note in the principal amount of sixteen thousand dollars payable in monthly installments to Ronald L. Rayfield, Trustee. The note was secured by a deed of trust upon

the residence of appellants in Hamilton County. On December 9, 1974, appellee Drake purchased the note from Rayfield.

The note called for payments to be made at the "residence of payee in Chattanooga, Tennessee" or at such other place as the holder might designate in writing. Beginning on December 15, 1974, appellants began making payments on the note to appellee, all payments being made by mail. Appellee did not have a mailbox at his residence, but kept a post office box. Apparently all payments were sent to that box, and this became the established and accepted course of dealing between the parties.

Appellants made regular payments to appellee until November 1976, at which time they missed one payment. This was later paid, but beginning in February 1977 payments began to be irregular. Mr. Drake testified:

"Well, the first payment was skipped in February of '77, and then I received two. And then skipped from March to May. And received one, which was a May— which was the April payment delinquent. Then, skipped from May until July, and I received two in July, one in August—"

Mr. Drake testified that "there was a pattern established from that time—pay a payment and skip two, pay and skip."

This pattern continued throughout the remainder of 1977 and the entire calendar year 1978. It further appears that during 1978 appellee Drake failed to credit two of the monthly payments received from appellants, apparently by inadvertence. This discrepancy in his records, however, was not conceded by appellee until trial of the case before the Chancellor in 1980.

By the end of 1978 appellee's record showed that appellants were seven months in arrears in their payments. At trial in March 1980, he conceded that because of the error in his records, they were actually only five months in arrears. Nevertheless, on January 3, 1979, appellee delivered the note to the trustee under the deed of trust and called upon the trustee to commence foreclosure. Actual notice of the decision of Drake to accelerate the maturity of the note and to foreclose, as authorized by the terms of the note and deed of trust, was not communicated to appellants until January 18, 1979. On that date the trustee wrote a letter to appellants so advising them and sending them a copy of the first advertisement which was to appear in a local newspaper, showing that the foreclosure sale was scheduled for February 21, 1979.

In the meanwhile, after delivering the note to the trustee with instructions to foreclose, Mr. Drake left Chattanooga and went to Florida for several weeks. He did not communicate with appellants prior to declaring a default and determining to accelerate the balance due on the note. Unaware of his decision, and in accordance with the practice which by this time had become established, appellants mailed to Mr. Drake on January 9, 1979, a check for two monthly payments. The check was apparently received at the post office box of Mr. Drake and forwarded to him in Florida. He received it there and credited it on the debt on January 22, 1979. He then mailed the check to his Chattanooga bank for deposit, and it cleared on January 25. It is thus established that four days after foreclosure notice had been mailed to appellants, appellee received and unconditionally accepted a partial payment on the arrearage. He credited it as he had been doing for almost two years and did not communicate further with appellants.

Under the facts and the course of dealing established in the record, it is clear that appellee had consented that payment might be made by use of ordinary mail. Therefore the payments dated January 9, 1979, occurred before appellants had learned of the intention of appellee to declare a default and to accelerate the balance of the debt. *See Brandtjen & Kluge, Inc. v. Pope,* 28 Tenn.App. 679, 692–93, 192 S.W.2d 496, 501 (1945).

██ It is settled law in this state that acceleration clauses generally are valid and will be enforced according to their terms. *See Gunther v. White,* 489 S.W.2d 529 (Tenn.1973). The leading case is *Lee v.*

*Security Bank & Trust Co.*, 124 Tenn. 582, 139 S.W. 690 (1911). There it was held that if a tender is made to the holder of a note of the amount then due prior to his exercise of an option to accelerate, such tender will make the option clause inoperative and will prevent acceleration of the balance. However, a tender of the overdue amount after the exercise of such option and before sale will not prevent such acceleration unless so agreed by the parties. *See also Stansbury v. Embrey*, 128 Tenn. 103, 158 S.W. 991 (1913); *Allen v. Goldstein*, 40 Tenn.App. 308, 324–25, 291 S.W.2d 596, 604 (1956).

■ Therefore, under the facts of this case, the receipt by appellee of a partial payment after he had exercised his option to accelerate would not ordinarily constitute a waiver or prevent his foreclosing under the deed of trust. The Court of Appeals correctly so held.

■ It is also settled, however, that as a result of a course of dealing between parties, the holder of an indebtedness may be deemed to have waived the right to accelerate without giving prior notice to the debtor of his intention to do so. As stated by the Court of Appeals:

> "There is another theory upon which the Chancellor's determination might be sustained, *viz.*: the conduct of the parties has been such that an implied modification of the terms of the agreement existed, by which the debtor was allowed to miss payments from time to time, and until the creditor gave actual notice of his intent to rely on the old terms no default and foreclosure could be accomplished."

The Court of Appeals held that this theory was not available to appellants, stating that it had not been advanced and also that "the missed payments occurred principally during the six months preceding foreclosure . . . ."

The latter statement by the Court of Appeals is not accurate. At one point in its opinion the Court stated that appellants had been current with their obligation to appellee Drake as of March 1978. This may have been a typographical error, because the record is clear that their payments had not been made on a regular basis since March 1977. It is not factually correct nor necessarily controlling that the missed payments occurred principally during the six months preceding foreclosure.

The records of both parties apparently were inaccurate and not carefully kept. It has already been pointed out that appellee failed entirely to credit appellants with two payments received during the calendar year 1978. He cashed these checks upon receipt without first making an entry upon his payment record.

Appellants were uncertain as to how many payments in arrears they were when they sent two payments on January 9, 1979.[1] After receiving the trustee's letter dated January 18, they tried repeatedly to communicate with Mr. Drake and to ascertain whether any arrearage still existed. Because of his absence in Florida, they were unable to contact him. The trustee had no information other than that the entire balance was claimed to be due by acceleration.

It was under these circumstances that appellants on February 12, 1979, instituted an action to enjoin the foreclosure. Appellee did not return to Chattanooga until the night before the sale was scheduled. At that time he returned Mrs. Lively's telephone call. He admitted stating to her that he was sorry about the foreclosure and that he had not desired it. She testified that he said that she and her husband had always paid well and that all he wanted was to have the payments made on a regular basis as had formerly been done. She stated that he said that he did not want the property securing the debt and also said:

> "... that if he had wanted to foreclose on the property he would not have accepted the check that my husband sent."

---

1. At this time Mr. and Mrs. Lively were separated. Mr. Lively testified that he had directed his secretary to send the monthly checks. Later he found that she had not done so on some occasions. More than one bank account had been used, making it difficult to keep accurate records.

■ We are of the opinion that the course of dealing between the parties over a period of almost two years was such that appellants had been led to believe that irregular payments would be accepted without acceleration. Under those circumstances appellee should not be permitted to foreclose on the note without first calling attention of appellants to the fact that he was insisting upon the original terms, and that no further irregular payments would be accepted. He should have afforded them an opportunity to make current any arrears, if such existed. At a preliminary hearing the Chancellor found that the January 9 payments did not make the note current and that there were actually five payments in arrears before those two payments were sent. These reduced the arrearage to three payments, all of which were made by appellants upon or immediately following a hearing in February 1979. Thereafter, pending trial on the merits, regular monthly payments were made by appellants into the registry of the Chancery Court.

■ Since all of the facts were not developed until the trial, we are of the opinion that the failure of appellants to plead waiver based upon prior course of dealing and acceptance of irregular payments was not fatal. The matter was actually tried and the controlling facts developed without objection at the evidentiary hearing. Under these circumstances the pleadings should automatically have been deemed amended to conform to the proof, and appropriate relief given.[2] See Rule 15.02, Tennessee Rules of Civil Procedure.

As stated, under controlling Tennessee cases the acceptance of partial payment by the creditor after declaration of default did not, in and of itself, preclude foreclosure. Nevertheless the prior course of dealings between these parties was such that appellee was not entitled to exercise his option to accelerate without first advising appellants that late payments would no longer be accepted and without giving them an opportu-

nity to cure any default that then existed. See *Brown v. Hewitt,* 143 S.W.2d 223 (Tex. Civ.App.1940); 55 *Am.Jur.2d, Mortgages* § 391 (1971); Annot., 97 A.L.R.2d 997, 1006 *et seq.* (1964); *Cf. American National Insurance Co. v. Davidson,* 166 Tenn. 13, 57 S.W.2d 788 (1933) (irregular payment and acceptance of insurance premiums); *Mayor and Aldermen of Morristown v. Davis,* 172 Tenn. 159, 110 S.W.2d 337 (1937).

Under all of the circumstances, we are of the opinion that the result reached by the Chancellor was equitable and appropriate. The judgment of the Court of Appeals is reversed and that of the Chancellor reinstated. The cause is remanded to the Chancery Court for entry of such further orders as may be necessary, including the disposition of any funds on deposit in that court. Costs incident to the appeal are taxed to appellee Drake. Costs in the trial court are taxed to appellants, Mr. and Mrs. Lively, as originally decreed by the Chancellor.

FONES, COOPER, BROCK and DROWOTA, JJ., concur.

---

**2.** *Cf. Stinemeyer v. Wesco Farms, Inc.,* 260 Or. 109, 487 P.2d 65 (1971) (issue of acceptance of late payments tried without objection and

could properly be considered even though not pleaded).