IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 12, 2006 Session

## GEORGE JERLES, ET AL. v. MARGIE PHILLIPS, ET AL.

**A Direct Appeal from the Chancery Court for Houston County**
**No. 6-154     The Honorable Robert E. Burch, Chancellor**

_____

**No. M2005-1494-COA-R3-CV - Filed: August 22, 2006**

_____

This case arises from a foreclosure on real property. The Appellants purchased the property from Appellees. Appellees financed the property and the parties executed a promissory note and deed of trust. The Appellants fell behind on their payments and the Appellees accelerated the debt pursuant to the terms of the Note, and ultimately foreclosed on the property. The Appellants filed suit for, *inter alia*, wrongful foreclosure. The trial court granted partial summary judgment in favor of Appellees, and denied Appellants' Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment. Upon disposal of all other claims, the Judgment became final. Appellants appeal. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Joe Weyant of Clarksville, Tennessee for Appellants, George Jerles and Peggy Jerles

W. Sidney Vinson of Erin, Tennessee for Appellees, Margie Phillips and J. D. Phillips

**OPINION**

On December 30, 1999, George Jerles and his wife, Peggy (together the "Jerleses," "Plaintiffs," or "Appellants") entered into a contract to purchase a parcel of land from J.D. Phillips and his wife, Margie (together the "Phillipses," "Defendants," or "Appellees"). The Phillipses agreed to provide financing; and, on January 21, 2000, the parties executed a Promissory Note (the "Note") in the principal amount of $45,000.00.[1] The Note provides, in relevant part, as follows:

_____

[1] The purchase price for the property was $50,000.00. The Jerleses paid $5,000.00 in earnest money toward that price.

The principal and interest due and payable on this note are due and payable as follows: This note is due and payable on an amortized basis with the principal and interest over one-hundred twenty (120) months with one-hundred nineteen (119) consecutive monthly payments, plus one (1) final balloon payment, to be made **IN THE AMOUNTS AND IN ACCORDANCE WITH THE AMORTIZATION SCHEDULE ATTACHED HERETO AS "EXHIBIT A."** Each payment, including principal and interest, beginning on the 1st day of May, 2000, and continuing on the 1st day of each consecutive month thereafter until fully paid. Providing that in the event of the default of any payment, or any part thereof, the entire remaining unpaid balance may be declared immediately due and payable at the option of the holders hereof.

In the event of failure to pay the full amount of any one (1) monthly payment as set out above within thirty (30) days of its respective due date, the holders hereof may declare the unpaid principal and accrued interest of this note immediately due and payable, and for each day the full amount of any one (1) payment remains unpaid after ten (10) days, *excluding the 1st installment payment*....

\*                          \*                          \*

Demand, notice and protest are expressly waived and if not paid in full at the time and in the manner above specified, then all principal and accrued interest shall, at the option of the legal holders hereof, become at once due and payable without notice....

(Emphasis in original).

This Note was secured by a Deed of Trust on the real property being purchased. The Deed of Trust contains the following, relevant, clauses:

**15. <u>DEFAULT.</u>** The occurrence of any one or more of the following events shall constitute an Event of Default hereunder:

(a) <u>Failure to Pay Note</u>. If GRANTOR shall fail to pay any part of the Note secured by this Deed of Trust, whether principal or interest, promptly when the same becomes due, and within any grace period allowed by the Note or if the GRANTOR shall fail to pay any sum, necessary to satisfy and discharge taxes and assessments

promptly when due, or to maintain insurance or repairs, or the necessary expense of protecting the Mortgaged Property.

\* \* \*

(d) <u>Nonperformance of Covenants</u>. If there shall occur any default in GRANTOR's covenants, warranties, agreements, liabilities, obligations and undertakings contained in this Deed of Trust, if such default is not cured within a period of ten (10) days following the date of written notice thereof by the BENEFICIARY or GRANTOR, or if there is another cure period specifically applicable to such default, within such applicable cure period.

**16. <u>REMEDIES</u>**. If an Event of Default shall occur, BENEFICIARY may exercise any one or more of the following remedies:

(a) <u>Acceleration</u>. BENEFICIARY may declare all obligations secured by this Deed of Trust, principal and interest, immediately due and payable without notice or demand except as otherwise set forth herein or in the Note, the same being hereby expressly waived.

(b) <u>Power of Sale</u>. BENEFICIARY may require the Trustee, and the Trustee is hereby authorized and empowered, to enter and take possession of the Mortgaged Property and to sell all or part of the Mortgaged Property, at public auction, to the highest bidder....

It is undisputed that the Jerleses made payments on the Note through April 3, 2003. It is also undisputed that the Jerleses' payments were often made late, and that the Phillipses accepted these late payments. However, no payments were tendered after April 3, 2003; and, during the last week of June, 2003, the Phillipses requested a meeting with the Jerleses to discuss their arrearage. No resolution was reached as a result of this meeting. On or about July 3, 2003, the Jerleses were notified by letter from the Phillipses' attorney that the Note was in default and that the entire balance was due within ten (10) days and, if not paid, foreclosure proceedings would begin. The letter reads, in relevant part, as follows:

Margie Phillips has advised me that your promissory note to them in the original principal amount of $45,000.00 dated January 21, 2000, plus interest accruing daily is in default because the payments are not being made. As provided in the note, the entire balance has been accelerated and called due by Mr. and Mrs. Phillips.

\* \* \*

-3-

The current principal balance of the note is $38,908.61. Late fees have accrued in the amount of $1,655.00. Interest since April 3rd has accrued in the amount of $614.40 and continues to accrue at the rate of $6.40 per day after today. The total balance of the note including principal, attorney fees, late fees and interest is $41,617.61 as of July 3, 2003. If the note is not paid in full within ten (10) days of the date hereof, foreclosure proceedings will begin...

The Jerleses made no payment in response to this acceleration letter.

On August 26, 2003, the first foreclosure notice was published. On October 9, 2003, the property was sold by the Trustee to satisfy the Jerleses' debt. On October 6, 2003, the Jerleses filed a Complaint in the Chancery Court for Houston County, which Complaint was amended on October 8, 2003. The causes of action alleged by the Jerleses in their Amended Complaint include breach of contract for wrongful foreclosure, fraud, negligent misrepresentation, fraudulent misrepresentation, slander of title, and violation of the Tennessee Consumer Protection Act (based upon the Jerleses allegation that the Phillipses had fraudulently induced them to buy the property based upon concealment of the fact that gasoline tanks had once been used on the property).[2] The Amended Complaint reads, in pertinent part, as follows:

9. [The Phillipses'] acceleration of the Note was premature, in that the Deed of Trust provides for a ten-day period in which the Petitioners may cure any default as to their performance on the Note. Such ten-day period would have been preceded by written notice by Respondents of the Petitioners' rights. The acceleration and calling due of the Note's balance could rightfully follow, only after such ten-day period allowing the Petitioners the opportunity to come current.[3]

On October 29, 2003, the Phillipses filed their Answer and Counterclaim for attorney's fees. The Phillipses' Answer reads, in relevant part, as follows:

7. Defendants admit that Plaintiffs were late in making their payments. Defendants admit that they accepted late payments but

[2] On March 17, 2005, the Jerleses voluntarily dismissed their claims of fraud, negligent misrepresentation, fraudulent misrepresentation, and violation of the Tennessee Consumer Protection Act. The claim for slander of title was dismissed for failure to state a claim upon which relief can be granted under Tenn. R. Civ. P. 12.02(6). The claim for breach of contract for wrongful foreclosure was dismissed by summary judgment, and this claim is the sole basis for the present appeal.

[3] We note that the Jerleses do not ask that the foreclosure be set aside in their Amended Complaint. We assume, therefore, that they are seeking damages for wrongful foreclosure. We note, however, that no proof of damages, or indeed any allegations of damages, have been asserted in the record. Nonetheless, we will address the issues raised in this appeal.

deny that they were ever satisfied with Plaintiffs' performance in that regard. The other allegations of this paragraph are denied.[4]

8. Defendants admit that on July 3, 2003 they notified the Plaintiffs, through their attorney, that the Note was in default and that the entire balance had been accelerated and called due. It is also admitted that the notice provided that failure to pay the balance within ten (10) days would result in foreclosure. Such notice also provided an additional thirty (30) days within which the Plaintiffs/Debtors could dispute any portion of the debt.

9. Defendants...would show that the Promissory Note provides that the entire balance may be called immediately due and payable when a payment is more than thirty (30) days late which, in this case, was more than ninety (90) days late. In fact, Plaintiffs have never tendered any late payments to the Substitute Trustee under the Deed of Trust within ten (10) days of the notice or to this date.

The Jerleses filed their Answer to the Phillipses' Counterclaim on December 1, 2003. On May 26, 2004, the Phillipses filed a Motion for Partial Summary Judgment on the claim of breach of contract for wrongful foreclosure, along with documentation in support of the Motion. On June 29, 2004, the Jerleses filed a Response to the Phillipses' Motion for Partial Summary Judgment. Following a hearing on September 2, 2004, the trial court entered its "Order Granting Partial Summary Judgment" on November 3, 2004. This Order reads, in pertinent part, as follows:

...[T]he Court finds that there is no genuine issue as to any material fact concerning the issue of wrongful foreclosure and that the Defendants are entitled to a judgment as a matter of law on that claim.

The legal grounds upon which the court grants the Defendants' motion are as follows:

First, on the question of whether or not the Deed of Trust provides for a ten day written notice to the debtor to cure a default for non-payment before the remedies are invoked, the Court finds no

---

[4] This answer in the Phillipses' Answer to the Jerleses' original Complaint read:

Defendants admit that Plaintiffs made payments on the Note, the last payment being on March 3, 2003, although every payment since August, 2002 was late, some as much as two months and no payment has been received since April, 2003. It is denied that Defendants were satisfied with the Plaintiffs' performance, but Defendants, nevertheless, showed remarkable patience in accepting the late payments over and over.

ambiguity in the language and finds as a matter of law that the debtors were not entitled under the Deed of Trust to a ten day written notice and right to cure for non-payment. Therefore, the foreclosure was not improper for this reason as asserted by the Plaintiffs.

Second, on the question of whether or not the repeated acceptance of late payments by the Defendants modified the written contract in such [a] manner as to prohibit foreclosure without first notifying the Plaintiffs that they were insisting upon the original terms, the Court finds that the doctrine of waiver is not applicable to the facts in this case. The Defendants had accepted late payments before, but the Plaintiffs have made no payments after April 3, 2003. At the time the foreclosure notice was published on September 9, 2003, the Plaintiffs had not made a payment for over five months. Nothing in the record reflects that Defendants had ever accepted payments this late. Defendants never refused any offered late payments before foreclosure. This is a case of "no payment" rather than "late payment". The doctrine of waiver does not apply.

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED**, that the motion of the Defendants for summary judgment on the issue of wrongful foreclosure be, and is hereby, granted, and that claim is hereby dismissed.

On December 2, 2004, the Jerleses filed a Motion to Alter or Amend the Judgment of the trial court. Attached to this Motion was the Affidavit of George Jerles, which the Jerleses sought to have admitted in support of their Motion. Following a hearing on March 17, 2005, the trial court entered an Order, on April 5, 2005, denying the Jerleses' Motion to Alter or Amend. The trial court reasoned that:

...[T]he Motion for Partial Summary Judgment contained evidence of only one event whereby the Defendants had accepted payments beyond the month in which they were due; that no established course of dealing has been shown whereby late payments were accepted beyond the month within which they were due; that the doctrine of waiver does not apply since no late payment was tendered and refused and that the Plaintiffs' explanation for not tendering any payments after April 3, 2003 is unacceptable....

By the April 5, 2005 Order, the trial court also ruled that the Affidavit of George Jerles "will not be considered by the Court because the Court finds that it contains legal conclusions and that it was not filed prior to the hearing on the Motion for Partial Summary Judgment and no good reason has been shown why it was not, or could not, have been filed then."

-6-

The Jerleses appeal and raise five issues for review as stated in their brief:

I. Whether the Deed of Trust executed among the parties contains ambiguity in two of its clauses.

II. Whether the doctrine of waiver applies to this case in light of the established course of dealing among the parties regarding the tender and acceptance of late payments.

III. Whether the court abused its discretion in its refusal to consider late filed Affidavits which were filed with the Plaintiffs' Rule 59.04 Motion to Alter or Amend.

IV. Whether it was futile for Plaintiffs to offer any payment to the Defendants toward the Note debt in light of the letter from the Defendants' attorney absolutely accelerating such debt.

V. Whether, when considering, *in toto*, the aforementioned issues, the trial court erred in granting the Defendants' Motion for partial summary judgment.

## Affidavit of George Jerles

We will first address the issue of whether the trial court erred in disallowing the Affidavit of George Jerles, which was proffered as an attachment to the Jerleses' Motion to Alter of Amend the Judgment. In ***Robinson v. Currey***, 153 S.W.3d 32 (Tenn. Ct. App. 2004), this Court also addressed a trial court's refusal to consider affidavits filed with the plaintiffs' Tenn. R. Civ. P. 59 motion to alter or amend the judgment. In determining what standard this Court should apply in reviewing these decisions, the ***Robinson*** Court reasoned as follows:

In ***Schaefer v. Larsen***, this Court stated:

when a summary judgment has been granted because the case at that point presents no facts upon which a plaintiff can recover, but prior to that judgment becoming final, the plaintiff is able to produce by motion facts which are material and are in dispute, the motion to alter or amend the judgment should be looked upon with favor, as the purpose of the summary judgment procedure is not to abate the trial docket of the Trial Court, but only to weed out cases for trial in which there is no genuine issue of fact.

-7-

***Schaefer v. Larsen***, 688 S.W.2d 430, 433-34 (Tenn.Ct.App.1985).

> Thirteen years later, this Court further explained that although ***Schaefer v. Larsen*** expressed some inclination to relax the strict requirements associated with motions for new trial based on newly discovered evidence, no court has held that the issues of diligence and availability cannot or should not be considered when a party seeks to alter or amend a summary judgment using new evidence.

***Bradley,*** 984 S.W.2d [929,] 933.

As we discussed in ***Bradley***:

> Oftentimes, lawyers seeking to overturn a summary judgment after it has been granted overlook the fact that the trial courts may deny a Tenn. R. Civ. P. 59.04 motion seeking to introduce new evidence if there is no particularized showing of due diligence or of the reasons why the new evidence could not have been discovered and presented prior to the initial consideration of the summary judgment motion.

***Id***. The standard expressed in ***Schaefer*** was not intended to provide a second bite at the apple for a party who did not take a motion for summary judgment seriously until the motion was granted. Summary judgment standards are both well settled, as discussed above, and difficult for the moving party to meet. Parties on both sides of a summary judgment motion must heed those standards. The non-moving party must fully oppose a motion for summary judgment before it is granted rather than rely on Rule 59.04 to overturn a summary judgment after only weakly opposing the motion.

In ***Harris v. Chern***, our Supreme Court in dealing with a revision under Rule 54.02 of a partial summary judgment discussed ***Schaefer*** and ***Bradley***, but noted that "[t]he question of what standard to apply in ruling on a Rule 59.04 motion to alter or amend, presented in ***Schaefer*** and ***Bradley***, is not directly at issue in [ Harris] and is thus beyond our reach." ***Harris v. Chern***, 33 S.W.3d 741, 746 n. 4 (Tenn.2000). The ***Harris*** Court did, however, note that "many of the same considerations discussed [in Harris] would be applicable when a litigant submits additional evidence as part of a Rule 59.04 motion

to alter or amend a summary judgment." *Id*. The *Harris* considerations require a trial court dealing with a Tenn. R. Civ. P. 54.02 motion to revise a grant of partial summary judgment to consider:

> 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor.

> *Id*. at 742. The standard set out in *Bradley* requiring, in a Rule 59.04 motion, a particularized showing of due diligence or of the reasons why the new evidence could not have been discovered and presented prior to the initial hearing on the summary judgment motion takes into account several of the same factors considered in *Harris*.

*Robinson v. Currey*, 153 S.W.3d 32, 38-39 (Tenn. Ct. App. 2004) (citing *Chambliss v. Stohler*, 124 S.W.3d 116, 120-21 (Tenn. Ct. App. 2003)).

In the instant case, the Affidavit of George Jerles contains testimony concerning the specific dates when payments on the Note were allegedly made. It also contains Mr. Jerles's understanding of the status of his delinquency, as well as his reaction to receiving the notice of acceleration in light of his understanding of the provisions of the Deed of Trust. As discussed above, the trial court's refusal to allow the Affidavit was based, *inter alia*, upon the trial court's conclusion that the Affidavit "was not filed prior to the hearing on the Motion for Partial Summary Judgment and no good reason has been shown why it was not, or could not, have been filed then." Tenn. R. Civ. P. 56.04 provides that affidavits in opposition to a motion for summary judgment should be filed "not later than five days before the hearing [on the motion for summary judgment]." As discussed above, a party seeking to introduce such evidence in support of a Tenn. R. Civ. P. 59.04 motion must make a showing of due diligence or of the reasons why the new evidence could not have been discovered or presented prior to the initial hearing on the motion for summary judgment. *Robinson*, 153 S.W.3d at 39 (citing *Chambliss v. Stohler*, 124 S.W.3d 116 (Tenn. Ct. App. 2003)). In this case, the Jerleses presented a statement of undisputed material facts in opposition to the Philipses' Motion for Partial Summary Judgment, which statement of undisputed material facts did not include many of the facts set out in Mr. Jerles's Affidavit. There is, however, no indication in this record that the information contained in Mr. Jerles's Affidavit was unknown to the Jerleses prior to the hearing on the motion for partial summary judgment. In fact, when asked at oral argument if there was any reason why the Affidavit was not filed prior to the summary judgment hearing, the Jerleses' attorney

indicated that there was "no reason" because the evidence contained and referenced in the Affidavit was in existence and known to Mr. Jerles prior to the hearing. Consequently, we cannot conclude that the trial court erred in disallowing Mr. Jerles's Affidavit.

## Ambiguity in the Deed of Trust

We now turn to the issue of whether the Deed of Trust at issue in this case contains an ambiguity between two of its clauses. Specifically, the Jerleses contend that Paragraph 15(d) of the Deed of Trust entitles them to ten (10) days, following written notice, to cure their default on the Note before the Phillipses may exercise their remedies.[5] The Phillipses assert that no such ten day period to cure the default was implied in the Deed of Trust, as they rely upon default pursuant to Paragraph 15(a) of the Deed of Trust.[6] We first note that it is well settled that the language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc*., 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79 (Tenn.Ct.App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat'l Bank*, 620 S.W.2d 526 (Tenn.Ct.App.1981). A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc*., 884 S.W.2d at 462 (citing *Oman Constr. Co. v. Tennessee Valley Authority*, 486 F.Supp. 375, 382 (M.D.Tenn.1979)), nor can this Court create an ambiguity where none exists in the contract. *Cookeville P.C.*, 884 S.W.2d at 462 (citing *Edwards v. Travelers Indem. Co.*, 201 Tenn. 435, 300 S.W.2d 615, 617-18 (1957)). Courts cannot make contracts for parties but can only enforce the contract that the parties themselves have made. *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830 (1950). The interpretation of a written contract is a matter of law and not of fact. *See Rainey v. Stansell*, 836 S.W.2d 117 (Tenn.Ct.App.1992).

---

[5] As set out above, this section of the Deed of Trust reads:

> (d) <u>Nonperformance of Covenants</u>. If there shall occur any default in GRANTOR's covenants, warranties, agreements, liabilities, obligations and undertakings contained in the Deed of Trust, if such default is not cured within a period of ten (10) days following the date of written notice thereof by the BENEFICIARY or GRANTOR, or if there is another cure period specifically applicable to such default, within such applicable cure period.

[6] As set out above, this section of the Deed of Trust reads:

> (a) <u>Failure to Pay Note</u>. If GRANTOR shall fail to pay any part of the Note secured by this Deed of Trust, whether principal or interest, promptly when the same becomes due, and within any grace period allowed by the Note or if the GRANTOR shall fail to pay any sum, necessary to satisfy and discharge taxes and assessments promptly when due, or to maintain insurance or repairs, or the necessary expense of protecting the Mortgaged Property.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. Summary judgment is a preferred vehicle for disposing of purely legal issues. *See Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993); *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31 (Tenn.1988). Because the construction of a written contract involves legal issues, construction of the contract is particularly suited to disposition by summary judgment. *Browder v. Logistics Management, Inc*., 1996 WL 181435, 1996 LEXIS Tenn.App. 227 (Tenn.Ct.App.1996); *see also Rainey*, at 119. Because only questions of law are involved in this issue, there is no presumption of correctness regarding the trial court's grant of summary judgment. *Bain* at 622. Therefore, our review of the trial court's grant of summary judgment is de novo on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

Although Paragraph 15(d) of the Deed of Trust does allow for a ten (10) day time to cure following written notice, this cure period is not absolute. Paragraph 15(d) also allows for another cure period, to wit: "...if such default is not cured within a period of ten (10) days following the date of written notice thereof by the BENEFICIARY to GRANTOR, *or if there is another cure period specifically applicable to such default, within such applicable cure period*." (Emphasis added). In this case, there is "another cure period specifically applicable" to the default of failure to pay the Note, which cure period is specifically outlined in the Note.

As discussed by our Supreme Court in *Ferguson v. Peoples Nat. Bank of LaFollette*, 800 S.W.2d 181 (Tenn. 1990):

> The original note and the deed of trust, the instruments executed when the parties entered into the contract, must be construed together to ascertain the intention of the parties. *Fox v. River Heights*, 22 Tenn.App. 166, 118 S.W.2d 1104 (1938), 55 Am.Jur.2d Mortgages § 176, at 303 (1971); 4 S. Williston, A Treatise on the Law of Contracts § 628, at 915 (3d ed. 1961).
>
> The generally accepted rule is stated in 55 Am.Jur.2d Mortgages § 176, at 303, 304 (1971):
>
> > Although there is contrary authority, it is a widely accepted general rule that a mortgage or deed of trust and a note or bond secured by it are to be deemed parts of one transaction and construed together as such; the provisions of both should be given effect, if possible, and the intention of the parties as determined

from an examination of both, not from one separately, must prevail.... Where, however, there is an irreconcilable difference between notes or bonds and mortgages or deeds of trust given to secure them, the former control.

*Id*. at 183.

Even if we concede that Paragraph 15(d) of the Deed of Trust is not reconcilable with either Paragraph 15(a) of the Deed of Trust or with the Note, under the above guidance, we must rely upon the Note to determine the intent of the parties. The Note, as set out above, specifically states that "[d]emand, notice and protest are expressly waived," and that the full amount of principal and interests shall become at once due and payable "at the option of the legal holders [of the Note]." Viewing the Deed of Trust and the Note as the same transaction, we conclude that the intention of these parties was to bypass any notice requirements.

## Course of Dealing

The Jerleses argue that, even if the Deed of Trust did not entitle them to a ten day period in which to cure their default, the Phillipses were, nonetheless, estopped from suddenly exercising their right to accelerate the debt based upon the parties' course of dealing. In Lively v. Drake, 629 S.W.2d 900, 903 (Tenn.1982), which the Jerleses rely upon, our Supreme Court held that "as a result of a course of dealing between parties [to a contract], the holder of an indebtedness may be deemed to have waived the right [to declare a default] without giving prior notice to the debtor of his intention to do so." *Id.* at 903. In *Lively*, appellants executed a promissory note on August 15, 1972, payable in monthly installments and the note was secured by a deed of trust upon the appellants' residence. *Id*. at 901. Appellants made regular payments until November 1976 at which time appellants missed one payment. Id. at 902. This payment was later made, but beginning in February 1977 payments were irregular. *Id*. A pattern of irregular payments continued through 1977 and the entire calendar year 1978. *Id*. On January 3, 1979, appellee delivered the note to the trustee under the deed of trust and called upon the trustee to commence foreclosure. *Id*. Actual notice of the decision to accelerate the note and foreclose, as authorized by the terms of the note and deed of trust, was not communicated to appellants until January 18, 1979. *Id*. In the meantime, unaware of the decision to accelerate and foreclose, and in accordance with the practice which by this time had become established, appellants mailed appellee a check for two monthly payments. *Id*. The two payments were credited on the debt and the checks were deposited into appellee's account. *Id*. The Tennessee Supreme Court noted that "[i]t is thus established that four days after foreclosure notice had been mailed to appellants, appellee received and unconditionally accepted a partial payment on the arrearage. He credited it as he had been doing for almost two years and did not communicate further with appellants." *Id*. The Court held that:

We are of the opinion that the course of dealing between the parties over a period of almost two years was such that appellants had been

led to believe that irregular payments would be accepted without acceleration. Under those circumstances appellee should not be permitted to foreclose on the note without first calling attention of appellants to the fact that he was insisting upon the original terms, and that no further irregular payments would be accepted. He should have afforded them an opportunity to make current any arrears, if such existed.

*Id*. at 904.

Although the facts in *Lively* closely resemble the ones of the case at bar, there is one crucial distinction. Whereas the *Lively* appellants tendered payment on their debt at fairly regular intervals (although those intervals did not correspond to the agreed upon terms), by the time the Jerleses received the acceleration letter, they had not made a payment in nearly three months. As the trial court correctly notes, the case at bar is more a scenario of non-payment than irregular payment. Furthermore, in order to establish waiver based upon a course of dealing, "it must first be shown that an accepted course of conduct or dealing had been established by the parties and, secondly, that appellant had relied on that course of conduct." *Dacus v. Weaver*, 1988 WL 138918 (Tenn.Ct.App. Dec. 28, 1988). Here, the parties had established a course of dealing in that the Phillipses accepted late payments without protest. However, it cannot reasonably be said that the Jerleses relied upon the Phillipses's acceptance of late payments when making no payment at all. It is true that on at least one occasion the Phillipses accepted payment for three months, which had not been paid. However, this single acceptance does not create a course of dealing. In any event, the record clearly shows that the Phillipses expressed their displeasure with the non-payment at the "porch meeting" in the last week of June. In his deposition testimony, Mr. Jerles described this meeting as follows:

Q [to Mr. Jerles]. Okay. After you made your payment on April the 3rd, 2003, have you spoken to or had any communication at all with Mr. and Mrs. Phillips? Was that the last time that you talked to them?

A. No. There was one other time after that that I went to their house. I think they called me to come over there because the payments had gotten behind again. And they left me with the impression, after our conversation, that they were going to have another conversation with you as their attorney, and they would let me know what they were going to do. That was my last conversation with them.

\*                              \*                              \*

Q. And what did they [the Phillipses] say?

-13-

A. Well, Margie asked me at that point if I would deed them the property back, and save a lot of expense. And I told Margie I couldn't do that....

\*                                          \*                                          \*

Q. During this conversation, did Mr. Phillips say anything?

A. Yes, sir.

Q. What did he say?

A. We'll just foreclose on it and resell it.

The content of this meeting was sufficient to put the Jerleses on notice that the Phillipses were dissatisfied with the Jerleses' servicing of their debt. Nonetheless, the Jerleses made no effort to make any sort of payment following this meeting. On appeal, the Jerleses contend that their continued non-payment was due to their perception that any attempt to pay the debt, or any portion thereof, would be futile given the acceleration letter. We cannot address this contention as there is nothing in the record from which we could determine how the Phillipses would have reacted to an attempt by the Jerleses to make some sort of payment either after the meeting or after receiving the acceleration letter. Any attempt by the Jerleses to pay some portion of their debt may, indeed, have saved this property from foreclosure, but that we will never know.

From the entire record before us, we conclude that the trial court did not err in its finding that no course of conduct had been established so as to waive the Phillipses right to accelerate the debt under the terms of the Note.

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Appellants, George Jerles and Peggy Jerles, and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.