# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 27, 2014 Session

## MIKE CRADIC v. MCCOY MOTORS, INC., ET AL.

**Appeal from the Law Court for Sullivan County (Kingsport)**
**No. C39380(C)      E. G. Moody, Chancellor**

---

**No. E2013-02857-COA-R3-CV-FILED-OCTOBER 20, 2014**

---

This appeal arises from a dispute over payment on a note ("the Note"). McCoy Motors, Inc. borrowed $90,000.00 from A. D. Kinkead ("Kinkead"). The Note provided, among other things, that the loan could be renewed at the end of twelve month periods and that, if Kinkead died before the Note was fully paid, the principal of the unpaid balance would be paid to William L. McCoy, Jr. and Sue McCoy.[1] Kinkead's attorney-in-fact, Mike Cradic ("Cradic"), informed McCoy that Kinkead was demanding that the Note be paid in full. McCoy refused to pay in full but instead continued to make payments on the Note. Kinkead, through Cradic, sued the McCoys in the Law Court for Sullivan County (Kingsport) ("the Trial Court") to compel full payment on the Note. Kinkead died and Cradic pursued the suit. The Trial Court found that demand had been made on the Note, and that at the end of the twelve month period during which demand was made, the Note came due and payable. The Trial Court entered judgment against McCoy Motors, Inc., and the McCoys, individually. McCoy Motors, Inc. and the McCoys appeal. We affirm the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Law Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

R. Wayne Culbertson and T. Martin Browder, Jr., Kingsport, Tennessee, for the appellants, William L. McCoy, Jr., Sue McCoy, and McCoy Motors, Inc.

Arthur M. Fowler and Arthur M. Fowler, III, Johnson City, Tennessee, for the appellee, Mike Cradic, Executor of the Estate of A. D. Kinkead.

---

[1]For purposes of convenience and as appropriate, we will refer to the Appellants at times collectively as "McCoy."

# OPINION

## **Background**

This case involves a loan between relatives that ended up in a lawsuit. Kinkead was an uncle to Mr. McCoy through a marriage to Mr. McCoy's aunt. Cradic is Kinkead's nephew.

In January 1997, McCoy Motors, Inc., a company started and operated by Mr. McCoy, borrowed $90,000.00 from Kinkead as evidenced by the Note. The Note provides as follows:

> McCOY MOTORS, INC.
> 1848 East Stone Drive
> Kingsport, Tennessee 37660
> (615) 246-3821
>
> JANUARY 4, 1997
> TO WHOM IT MAY CONCERN:
> A.D. Kin[k]ead has loaned McCoy Motors, Inc. the sum of $90,000.00 at the interest rate of 6% per year. This loan is for twelve months and interest is to be paid on the first of the month on a monthly basis. Said loan can be renewed at the end of each twelve months with the interest to be no more than one and one half percent under NEW YORK prime interest rate or less than 6% per year . . . .
>
> In the event of the death of A.D. Kinkead, said principle [sic] of the unpaid balance will be paid to <u>William L. McCoy, Jr & Sue McCoy</u>, at the end of duration of said loan.
>
> /s/Wm L. McCoy, Jr.          /s/A.D. Kinkead
> Wm L. McCoy, Jr., President      A.D. Kinkead

The loan was not signed by the McCoys individually and states clearly that "A.D. Kin[k]ead has loaned McCoy Motors, Inc. the sum of $90,000 . . . ." From January 1997 through February 2007, McCoy Motors, Inc. paid Kinkead $500.00 per month on the Note. In February 2007, McCoy Motors, Inc. paid $9,000.00 on the Note. Beginning in March 2007, McCoy Motors, Inc. paid Kinkead $1,000.00 per month on the Note. The last payment was made in December 2011. In December 2011, the amortized balance on the Note was $28,676.98.

In July 2010, the elderly Kinkead appointed Cradic, his nephew, as his attorney-in-fact. On July 8, 2010, Cradic visited Mr. McCoy and requested full payment of the Note on behalf of Kinkead. On July 20, 2010, Cradic returned to McCoy Motors, Inc. to follow up with Mr. McCoy on receiving a lump sum check for the balance on the Note. Mr. McCoy refused to pay in full. Instead, McCoy Motors, Inc. continued to make monthly payments on the Note.

In February 2011, attorney Raymond C. Conkin, Jr. demanded payment of the Note on behalf of Kinkead. McCoy Motors, Inc. declined to pay the balance. In April 2011, attorney Arthur M. Fowler again made demand for the monies on behalf of Kinkead. Still, McCoy Motors, Inc. did not pay the balance. In October 2011, Kinkead, through Cradic, sued McCoy Motors, Inc. and the McCoys individually to recover the monies. In December 2011, Kinkead died at the age of 91. Cradic continued to pursue the case.[2]

This matter was tried in May 2013. Cradic had recorded his July 2010 conversations with Mr. McCoy regarding the Note. At trial, partial transcripts of the recordings were entered into the record. The July 8, 2010 transcript includes the following, in part:

Mike Cradic: They've transferred him from the VA down here. Brookhaven.

Bill McCoy: Brookhaven . . . oh, it's right down here across the creek.

Mike Cradic: Across the creek.

Bill McCoy: Oh, okay, I can go down there anytime I want to.

Mike Cradic: Yea. Yea, he's down there. But what I was wantin' to talk to you about is that money. I'm going to have to have that dang money. Because I'm fixin' to incur more expense than I'll ever get paid.

Bill McCoy: Now he's got 60-some thousand dollars layin' out there in the . . . .

Mike Cradic: Yea, I know. I know.

Bill McCoy: Well anytime you want it, let me know and I will go get it.

_____

[2]Cradic filed a Notice of Suggestion of Death and a Motion for Substitution. A Consent Order Substituting Party granting Cradic's motion for substitution was entered by the Trial Court.

Mike Cradic: No, I can go get it.  He put me on his bank account.

Bill McCoy: Well go get it.

Mike Cradic: I don't want to until I have to but I need that "48" too.

*\*\**

Mike Cradic: Well is there anyway that you can cut me that check?

Bill McCoy: No.  Let me tell you what I just went through . . . . [proceeds to recount some recent personal problems]

*\*\**

Bill McCoy: See I told him (unintelligible), I'm gonna pay you 6% (six percent).

Mike Cradic: Yea, I remember that.

Bill McCoy: and I said when it goes to 2, I'm gonna pay you that and I'm gonna pay you this (unintelligible)

Mike Cradic: So, it's paid down to 48, right?  That last check said $48,000. Right?  I mean if you can, as soon as you can, I would like to get it and put it in the bank.  That is what I want to do.  But I'm going to go down here to the hospital.

On July 20, 2010, Cradic went to see Mr. McCoy again.  Cradic again recorded their meeting. The transcript reads in part as follows:

Bill McCoy: Come on over and sit down.  Make yourself at home.  You want something cold to drink?

Mike Cradic: No, I'm gonna have to go.  I wanted to come to see if you had that check.

Bill McCoy: I'm not going to write you that check Mike.

Mike Cradic: Oh, you're not??

-4-

Bill McCoy: No.

Mike Cradic: How come?

Bill McCoy: 'Cause I don't need to.

\*\*\*

Mike Cradic: Well my being Power of Attorney, I can request it to be paid in full.

Bill McCoy: No you can't.

\*\*\*

Bill McCoy: Well, you may doubt it, but it may be true. I intend to pay him and, here again, this was unspoken when I told him I was going to pay him back $1000.00 (one thousand dollars) a month and I intend to do what I told him I was going to do and I hope he lives to get every dime of it back.

\*\*\*

Bill McCoy: I don't want no hard feelins' over this but I'm gonna do to him exactly what I told him I would do.

Mike Cradic: Well . . . he asked me Friday night if I was going to come down here and get it and I said "yea," and he said "atta boy." So, whatever.

  In August 2013, the Trial Court entered its order granting judgment in favor of Cradic against McCoy Motors, Inc. in the amount of $31,000.00 plus $2,675.69 interest and post judgment interest. In its conclusions of law, the Trial Court explained its decision:

> From July 2010, until January 4, 2011, McCoy Motors, Inc. knew that Mr. Kinkead wanted the Note repaid but had no obligation to repay it until January 4, 2011.

\*\*\*

> The Note did not "automatically" renew on January 4, 2011, since Mr. Kinkead, through his attorney-in-fact, Mr. Cradic, gave McCoy Motors, Inc.

notice in July 2010 that the Note was to be paid in full. If the parties had varied the terms of the Note to allow an "automatic" renewal, Mr. Kinkead's notice to McCoy Motors, Inc., through his attorney-in-fact, that he was insisting that the original terms of the Note was sufficient to require McCoy Motors, Inc. to comply with those terms. *Livey v. Drake*, 629 S.W.2d 900, 904 (Tenn. 1982) The notice did not need to be in writing as the contract could be modified orally. *Galbreath v. Harris,* 811 S.W.2d 88, 91 (Tenn. App. 1990). Such notice would be proper to require McCoy Motors, Inc. to comply with the clear terms of the Note because collateral agreements to a written contract must be limited to subject matter which does not contradict or vary the terms which are plainly expressed in the Note. *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn. App. 1990)

The acceptance of monthly payments after January 4, 2011, did not act as a renewal of the Note by waiver. To constitute abandonment or waiver of a legal right, there must be a clear, unequivocal and decisive act by Mr. Kinkead showing such a purpose, or acts amounting to estoppel, on his part. Waiver cannot be made out of an uncertain application but must be clear, unequivocal and decisive. The monthly payments were received under protest and did not constitute a waiver to bar this lawsuit to collect the balance of the Note. (See *Ramos v. Knoxville Emergency Physicians*, 1998 Tenn. App. LEXIS 248, copy attached). The proof does not establish the required action or inaction inconsistent with the claim or right being waived. *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. App. 1998) The Plaintiff did not acquiesce in McCoy Motors, Inc.'s continued monthly payment of the Note but instead objected to the payment, demanded payment of the overdue Note in February and April and filed suit in October to recover the monies due on it. The Plaintiff never waived demand for payment of the Note and promptly and aggressively took action to collect the balance due and owing.

William F. McCoy, Jr. and Sue McCoy did not sign the Note individually; therefore, they are not liable for the Note.

(Format modified). Both parties filed motions to alter or amend after entry of the order. In November 2013, the Trial Court entered an order granting and denying certain of the motions' requests. The Trial Court modified the judgment to $28,676.98, "the amount reflected by the amortization schedule and which is the most equitable amount." Also, the Trial Court entered judgment against the McCoys individually. McCoy Motors, Inc., as well as Mr. and Mrs. McCoy, timely appealed to this Court.

**Discussion**

Although not stated exactly as such, McCoy raises two issues on appeal: 1) whether the Trial Court erred in finding as a matter of law that the note executed January 4, 1997 was not renewed at the end of the twelve month period ending in January 2011; and, 2) whether the Trial Court erred in finding the McCoys individually liable for the $28,676.98 balance on a note they never signed.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

This appeal requires interpretation of the terms of a note. As this Court explained in *Kafozi v. Windward* regarding construction and interpretation:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)(citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id*. (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

> This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal

meaning of the language controls the outcome of the dispute. *Id*. A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id*. (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id*. Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id*.

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698-99 (Tenn. Ct. App. 2005).

We first address whether the Trial Court erred in finding as a matter of law that the note executed January 4, 1997 was not renewed at the end of the twelve month period ending in January 2011. The Note, evidencing Kinkead's loan of $90,000.00 to McCoy Motors, Inc., provides that "[s]aid loan can be renewed at the end of each twelve months . . . ." From 1997 through 2011, McCoy Motors, Inc. made monthly payments on the Note. McCoy argues that the conduct of the parties was such that it established a pattern of expected payments, and that the parties never varied from this framework.

The option to renew the loan, contained in the Note, is significant. If either of the parties wished to end the arrangement, they could decline to renew the Note at the end of the twelve month period. The record on appeal reflects that in July 2010, an ailing Kinkead, through his attorney-in-fact Cradic, demanded that the Note terminate and that full payment should be rendered. When this intention was manifested by Kinkead through Cradic, and never revoked, the Note was due in full at the end of the then 12 month period, January 4, 2011. The evidence does not preponderate against any of the Trial Court's findings of fact. The record is clear that Kinkead demanded payment through Cradic's conversations with Mr. McCoy in July 2010 and through subsequent actions. McCoy could not unilaterally keep the agreement going on his own terms in spite of Kinkead's expressed demands. In short, McCoy Motors, Inc. should have paid the balance of the Note in January 2011. The Trial Court did not err in awarding a judgment against McCoy Motors, Inc.

We next address whether the Trial Court erred in finding the McCoys individually liable for the $28,676.98 balance on a note they never signed. Both parties on appeal approach this issue in terms of a third-party beneficiary theory, to different ends. However, a third-party beneficiary theory need never be reached. When the loan terminated in January 2011 based upon Kinkead's demands of July 2010, the balance was due to Kinkead. Therefore, the McCoys, individually, never should have received the balance. At trial, when asked if he and Mrs. McCoy had been paid the balance of the Note, Mr. McCoy testified: "Yes. . . . That is – it's still in our account, yes." Had Kinkead never made demand, upon his death the balance of the principal would have gone to the McCoys as provided in

the Note. This, however, is not what happened. Kinkead, through Cradic, did end the loan, which became due and payable months before Kinkead's death. McCoy cannot by the wrongful refusal of McCoy Motors, Inc. to pay the balance due as demanded by Kinkead keep the Note unpaid until Kinkead's death in order to trigger the provision providing for the balance of the principal to go to Mr. and Mrs. McCoy. Therefore, the Trial Court did not err in entering a judgment against the McCoys individually for monies, the balance of the Note, they never should have received initially. We affirm the judgment of the Trial Court in its entirety.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, William L. McCoy, Jr., Sue McCoy, and McCoy Motors, Inc., and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE